**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| ***In re:*** **CAASTLE, INC.,** ***Debtor.*** | **CHAPTER 7** **CASE NO. 25-11187-BLS** |
| **GEORGE L. MILLER, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.,** ***Plaintiff,*** **v.** **CHRISTINE HUNSICKER,** ***et al.,*** ***Defendants.*** | **ADV. CASE NO. 26-50225-BLS** |

**OPENING BRIEF OF DEFENDANTS LORI HOBERMAN AND HOBERMAN LAW GROUP PLLC IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM AGAINST THEM UPON WHICH RELIEF MAY BE GRANTED**

Alan D. Albert (DE 6258)
O'Hagan Meyer PLLC
2751 Centerville Road, Suite 100
Wilmington, DE 19808
T: (302) 492-2151
*aalbert@ohaganmeyer.com*

*Counsel for Defendants Lori Hoberman and Hoberman Law Group PLLC*

August 14, 2026

# TABLE OF CONTENTS

Page

Table of Contents ..... ii

Table of Authorities ..... iv

Nature and Stage of the Proceedings ..... 2

Summary of the Argument ..... 2

Statement of Facts Relevant to Motion ..... 3

Applicable Legal Standard ..... 5

ARGUMENT ..... 6

I. THE HIGH BAR TO DELAWARE AIDING AND ABETTING CLAIMS: PLAINTIFFS MUST ESTABLISH BOTH *ACTUAL* KNOWLEDGE, AND *CULPABLE*, SUBSTANTIAL PARTICIPATION ..... 7

II. THE TRUSTEE FAILS TO PLEAD *ACTUAL* KNOWLEDGE, BY HOBERMAN, OF (A) THE UNDERLYING BREACHES OF FIDCUIARY DUTY ALLEGED, AND (B) THE IMPROPRIETY OF HER OWN CONDUCT ..... 13

III. THE TECH PIONEERS MISSTATEMENT CLAIM FAILS TO PLEAD SUBSTANTIAL ASSISTANCE; EVEN IF TRUE, THE SINGLE STATEMENT ALLEGED, WITHOUT MORE, CANNOT CONSTITUTE CULPABLE, SUBSTANTIAL PARTICPATION IN THE UNDERLYING BREACHES OF FIDCUIARY DUTY ASSERTED ON THE PART OF THE DIRECTORS ..... 15

IV. THE SETTLEMENT MARKUP CLAIM FAILS TO PLEAD SUBSTANTIAL ASSISTANCE; REVIEWING SOME OTHER LAWYER'S DRAFT SETTLEMENT AGREEMENT RESOLVING A REDEMPTION DISPUTE CANNOT, WITHOUT MORE, CONSTITUTE CULPABLE, SUBSTANTIAL PARTICIPATION IN THE UNDERLYING BREACHES OF FIDUCIARY DUTY ALLEGED ON THE PART OF THE DIRECTORS ..... 19

V. THE REDEMPTION REVIEW CLAIM FAILS TO PLEAD SUBSTANTIAL ASSISTANCE; REVIEWING A PROPOSED STOCKHOLDER REDEMPTION CANNOT, WITHOUT MORE, CONSTITUTE CULPABLE, SUBSTANTIAL PARTICPATION IN THE UNDERLYING BREACHES OF FIDCUIARY DUTY ALLEGED ........ 22

Conclusion ........ 24

Certificate of Service ........ 26

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

### *Supreme Court of the United States*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................ 6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................ 5, 6

### *United States Courts of Appeal*

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016)........................................ 5

*Martinez v. UPMC Susquehanna*, 986 F.3d 261 (3d Cir. 2021) ........................................ 6

## DELAWARE STATE COURT CASES

### *Delaware Supreme Court*

*In re Columbia Pipeline Grp., Inc., Merger Litigation,* 342 A.3d 324 (Del. 2025)........................................ 7, 10, 11, 12, 13, 15

*Deutsche Bank Nat'l Tr. Co. v. Goldfeder*, 86 A.3d 1118, 2014 Del. LEXIS 24 (Del. 2014) ........................................ 12

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) ........................................ 8

*In re Mindbody, Inc. Stockholder Litigation,* 332 A.3d 349 (Del. 2024) ........................................ 7, 9, 10, 11, 12, 13, 15, 18, 21, 22, 23

*RBC Cap. Mkts. LLC v. Jervis*, 129 A.3d 816 (Del. 2015) ........................................ 7

### *Court of Chancery*

*In re Caremark International Inc.,* 698 A.2d 959 (Del. Ch. 1996) ........................................ 3

*In re Dole Food Co., Inc. Stockholder Litigation,* 2015 Del. Ch. LEXIS 223, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015)........................................ 10

Page

*Gilbert v. El Paso Co.,* 490 A.2d 1050 (Del. Ch. 1984) .................................................... 8

*Penn Mart Realty Co. v. Becker,* 298 A.2d 349 (Del. Ch. 1972) ....................................... 8

*Weinberger v. Rio Grande Industries,* 519 A.2d 116 (Del. Ch. 1986)............................... 8

**FEDERAL RULES**

Fed. R. Bankr. P. 7012(b) ......................................................................................... 1, 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 5

**TREATISES & RESTATEMENTS**

*Restatement (Second) of Torts,* § 876 (Am. L. Inst. rev. ed. 1979)............................. 9, 10

*Restatement (Second) of Torts,* § 876 cmt. d (Am. L. Inst. rev. ed. 1979)....................... 10

*Restatement (Third) of Torts, Miscellaneous Provisions,* § 28 (Am. L. Inst. 2020) (Oct. 2024 update) ............................................................................................ 11

*Restatement (Third) of Torts, Miscellaneous Provisions,* § 28 cmt. c (Am. L. Inst. 2020) (Oct. 2024 update) ........................................................................ 12

**OTHER AUTHORITIES**

S. Blake, P. Kazanoff and J. Youngwood, *M&A Ruling Reinforces High Bar For Aiding, Abetting Claims,* Law360.com, Aug. 7, 2025 (available online at https://www.law360.com/articles/2369610/m-a-ruling-reinforces-high-bar-for-aiding-abetting-claims ) (last accessed Aug. 13, 2026) ........................................................... 8

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ***In re:*** **CAASTLE, INC.,** ***Debtor.*** | : | **CHAPTER 7** **CASE NO. 25-11187-BLS** |
| **GEORGE L. MILLER, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.,** ***Plaintiff,*** | : | |
| **v.** | : | **ADV. CASE NO. 26-50225-BLS** |
| **CHRISTINE HUNSICKER,** ***et al.,*** ***Defendants.*** | : | |

**OPENING BRIEF OF DEFENDANTS HOBERMAN AND HOBERMAN LAW GROUP PLLC IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM AGAINST THEM**

**COME NOW** Defendants Lori Hoberman, Esquire ("Hoberman") and Hoberman Law Group PLLC (the "Law Firm"), and for their Opening Brief in support of their contemporaneously-filed motion (the "Motion"), pursuant to Fed. R. Civ. P. 12(b)(6) as incorporated through Fed. R. Bankr. P. 7012(b), to dismiss the Complaint as against them for failure to state a claim upon which relief may be granted, respectfully state as follows.

### *Nature and Stage of the Proceedings*

The principal thrust of this adversary proceeding is to impose state law tort liability on former directors and officers of the debtor, focused on asserted breaches of the fiduciary duties of loyalty and oversight and "improper" redemptions. The present Motion, however, arises out of Trustee's effort also to sweep within the ambit of these claims Defendant Lori Hoberman, a leading New York City transactional lawyer who from time to time advised the debtor, and her small law firm. Ironically, Hoberman herself was an investor victim of the conduct the Trustee seeks to address through his claims, investing personally in a debtor-related venture only weeks before the conduct at issue became known.[1] Moreover, the Trustee *affirmatively* pleads that Hoberman was intentionally kept in the dark by the asserted wrongdoers – precisely because they knew she would blow the whistle. This motion to dismiss is the initial responsive pleading of Hoberman and the Law Firm.

### *Summary of the Argument*

1. The Complaint fails to state a sufficient state law claim for aiding and abetting breach of fiduciary duty against Defendant Hoberman under the stricter standards articulated by the Delaware Supreme Court in 2024-25.

---

[1] While Hoberman's late-in-the-game personal investment in the CaaStle-related joint venture, P180, Inc., is not a matter pled in the Trustee's Complaint, and thus likely cannot factor into consideration of this Motion, it is an undisputed fact, known to the Trustee, that begs the question why someone allegedly substantially involved in aiding breaches of fiduciary duty that deceived investors would nevertheless put her own resources at risk. P180 is the subject of a civil RICO action presently pending in the United States District Court for the Southern District of New York, *P180, Inc. v. Singh et al.,* Civ. Act. No. 1:25-cv-4432-VM-SDA (the "P180 Litigation"). Several of the director and officer defendants in the present adversary proceeding are also individual defendants in the P180 Litigation. Notably, Hoberman and the Law Firm are not.

2. The Trustee has failed to plead facts to establish the actual knowledge and culpable, substantial participation that are essential elements of the state-law tort alleged.

3. Defendant Law Firm's asserted liability is entirely vicarious, and in the absence of a viable state law claim against Hoberman, the vicarious liability claim must also fall.

## ***Statement of Facts Relevant to Motion***

The Chapter 7 debtor, CaaStle Inc. ("CaaStle" or the "Company") collapsed amid revelations of fraudulent inducement of investors by means of falsified financial statements, bank records, income statements, and other financial information. The debtor's founder, Christine Hunsicker, has pled guilty to criminal securities fraud, agreed to a forfeiture of $300,000,000, and is awaiting sentencing on August 20, 2026. Compl. (DI 1) ¶¶ 2, 7, 13-15; *see generally United States v. Hunsicker,* Cr. Act. No. 1:25-cr-318 (S.D.N.Y.) (pending criminal prosecution).

In this action, the Chapter 7 Trustee asserts, in brief, that the directors of the debtor (other than Hunsicker) were at best asleep at the switch, and at worst willing participants in covering up the fraud for months, enabling favored investors to redeem their positions and escape the coming fall. *See, e.g.,* Compl. ¶¶ 253-60 (alleging breach of fiduciary duty of loyalty by Hunsicker); ¶¶ 261-96 (alleging *Caremark*[2] oversight failures by directors); ¶¶ 297-311, 312-21 (alleging breaches of fiduciary duty by officers Jain and Corlito); ¶¶ ¶¶

[2] *In re Caremark International Inc.,* 698 A.2d 959 (Del. Ch. 1996).

333-60 (alleging improper redemptions to favored insiders at a time when capital was impaired).

Into this legal maelstrom against insiders, the Trustee also attempts to sweep an outsider and non-fiduciary, Defendant Hoberman, as well as (vicariously) her law firm,[3] whose sole tie to the debtor is that the debtor was a client for which Hoberman and the firm provided legal services. *Id.* ¶ 25. Importantly for present purposes, Hoberman was *not* general counsel to the debtor; as the Trustee pleads, the debtor had an in-house General Counsel. *Id.* ¶ 54. Instead, as the Complaint freely acknowledges, Hoberman was engaged from time to time to provide discrete legal services.

In a Complaint notable for its length and detail regarding the actions of directors and officers, the text is remarkably thin when it comes to particularized allegations against Hoberman. Indeed, the thin allegations against Hoberman are contained in only a handful of the Complaint's 360 paragraphs, easily summarized in a few sentences; the Trustee asserts that:

- Hoberman told a potential investor, Tech Pioneers Fund, in 2021 that the debtor did not maintain audited financial statements, but allegedly knew that accounting firm BDO had been retained to prepare such statements because she helped gather information for them three to four years earlier (¶¶ 81-83) (the "Tech Pioneers Misstatement Claim");

- Hoberman reviewed and proposed several revisions to a settlement agreement with "Investor A" – an agreement drafted by other counsel representing the company with respect to this buyback agreement -- relating to its nondisclosure provisions (¶ 169) (the "Settlement Markup Claim"); and

[3] For the sake of brevity, Hoberman and the Law firm will be referred to collectively as "Hoberman" herein.

- Hoberman "reviewed" a stock redemption in relation to "shares allotted to management personnel in 2011 or 2012" (¶ 222) (the "Redemption Review Claim").

With nothing more than these three sets of particularized facts alleged, the Trustee then proceeds to make generalized, purely conclusory claims against Hoberman in Count IV of the Complaint (¶¶ 312-332), alleging generally that Hoberman:

- "[K]nowingly" participated and assisted "Hunsicker's breaches of fiduciary duty to CaaStle" (¶ 322);
- "[M]ade materially false statements to prospective investors," upon knowledge and belief at Hunsicker's direction (¶ 324);
- "[F]alsely represented to a prospective investor that CaaStle [did] not maintain audited financial reports, despite her previous participation in the audit process with BDO" (¶ 325);
- Was "involved  in negotiations to settle and release all claims related to Hunsicker's provision of false information to Investor A" (¶ 326); and
- "[C]ontinued to assume an investor-facing role and solicit investments in CaaStle" (¶ 327).

## ***Applicable Legal Standard***

In addressing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), incorporated into the Bankruptcy Rules by Fed. R. Bankr. P. 7012(b), the Court applies familiar standards. As the Third Circuit recently summarized:

> To survive a motion to dismiss, a complaint need not be detailed. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). It needs just "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement, in turn, must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). . . .

> Plausible does not mean possible. The facts must be more than "'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 557). But plausible does not mean probable either. *Id.*
>
> The court need only be able to draw a "reasonable inference" that the defendant has broken the law. *Id.*
>
> The court must take the complaint's factual allegations as true. But it may disregard labels, conclusions, and "formulaic recitation[s] of the elements." *Twombly*, 550 U.S. at 555.

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (internal citations to nonofficial reporters omitted for readability).

As detailed in the Statement of Relevant Facts, above, the language of the Trustee's Count IV against Hoberman and the Law Firm, itself (Compl. ¶¶ 322-32), is comprised solely of "formulaic recitations of the elements," material to be disregarded pursuant to *Twombly.* The factual assertions that the Court must credit as true for present purposes are thus those setting out the three transactions discussed in the body of the Complaint.

## ARGUMENT

In seeking to bring outside counsel, performing ordinary legal tasks, into the ambit of his sweeping adversary proceeding, the Trustee sweeps too far on the thin facts pleaded. The Trustee's adversary Complaint does not sufficiently plead the demanding, dual requirements, of *actual* knowledge and *culpable*, significant participation, that the Delaware state law tort of aiding and abetting breach of fiduciary requires. If there were any doubt on the height of the pleading bar that the Trustee must clear, the Supreme Court of Delaware resolved all doubts in a pair of very recent decisions universally understood

to *raise* that bar significantly. The Trustee has not met the bar, and cannot on the facts alleged; the Complaint should be dismissed as against Hoberman and the Law Firm.

Section I discusses the state law requirements of aiding and abetting, as elaborated by the Supreme Court in its recent *Mindbody* and *Columbia Pipeline* decisions. Sections II applies the actual knowledge requirement, and Sections III, IV, and V apply the substantial assistance requirement, to the three specific factual claims, outlined in the preceding section, alleged by the Trustee. Each, these Defendants respectfully would submit, falls far short of what Delaware law requires.

## I. THE HIGH BAR TO DELAWARE AIDING AND ABETTING CLAIMS: PLAINTIFFS MUST ESTABLISH BOTH *ACTUAL* KNOWLEDGE, AND *CULPABLE*, SUBSTANTIAL PARTICIPATION.

It has long been repeated as universal truth in the Court of Chancery, and in the Delaware Supreme Court when reviewing relevant Chancery cases, that the exacting requirements of scienter and culpable participation "make[] an aiding and abetting claim among the most difficult to prove"[4] – a claim that, as the old saying in Chancery goes, is "easy to plead, and impossible to prove." This high bar became much higher in 2024 and 2025 with the Delaware Supreme Court's decisions in *In re Mindbody, Inc. Stockholder Litigation,* 332 A.3d 349 (Del. 2024), and *In re Columbia Pipeline Grp., Inc., Merger Litigation,* 342 A.3d 324 (Del. 2025) ("*Columbia Pipeline*"). It is this pair of cases –

[4] *RBC Cap. Mkts. LLC v. Jervis*, 129 A.3d 816, 861-62 (Del. 2015).

universally understood to raise the legal bar for aiding and abetting claims[5] -- that the Court must apply in evaluating the legal sufficiency of the Trustee's claims against Hoberman.

The elements of aiding and abetting breach of fiduciary duty under Delaware law are, at a general level, clear:

> A third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party "knowingly participates" in the breach. To survive a motion to dismiss, the complaint must allege facts that satisfy the four elements of an aiding and abetting claim: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants," and (4) damages proximately caused by the breach.

*Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (quoting *Gilbert v. El Paso Co.,* 490 A.2d 1050, 1057 (Del. Ch. 1984) (first quotation); *Penn Mart Realty Co. v. Becker,* 298 A.2d 349, 351 (Del. Ch. 1972) (second quotation); and citing *Weinberger v. Rio Grande Industries,* 519 A.2d 116, 131 (Del. Ch. 1986) (same), and *Gilbert,* 490 A.2d at 1057 (same)).

But it is in the third element in *Malpiede's* formulation – "knowing participation" – in which the devilish details lie. In particular, what level of knowledge is sufficient to constitute "knowing" involvement (notably, is constructive, "should have known" knowledge sufficient?), and when does mere proximity become "participation"?

The trial court decisions on appeal in *Mindbody* and *Columbia Pipeline* preceded from the premise that constructive knowledge could be enough to support a finding of aiding and abetting. Similarly, the level of involvement that could rise to "participation"

---

[5] *See. e.g.,* S. Blake, P. Kazanoff and J. Youngwood, *M&A Ruling Reinforces High Bar For Aiding, Abetting Claims,* Law360.com, Aug. 7. 2025 (*passim*) (available online at https://www.law360.com/articles/2369610/m-a-ruling-reinforces-high-bar-for-aiding-abetting-claims ) (last accessed Aug. 13, 2026).

seemed often to be a semantic standard in search of a bright line. *Mindbody* and *Columbia Pipeline* changed all of that in dramatic fashion.

***Mindbody* *Provides an Analytical Framework for Assessing "Substantial Participation" in Aiding and Abetting Claims.*** In *Mindbody,* the Court provided a sweeping historical review of Delaware courts' development of the contours of "knowing participation" required to establish a viable claim for aiding and abetting breach of fiduciary duty. The Court found that the core concepts employed by it and other Delaware courts trace their origins to the "substantial assistance" element of § 876 of the *Restatement (Second) of Torts*, which states in its entirety:

> **§ 876 Persons Acting in Concert**
>
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) *knows* that the other's conduct constitutes a breach of duty and *gives substantial assistance or encouragement* to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Restatement (Second) of Torts,* § 876 (Am. L. Inst. rev. ed. 1979) (emphasis added).

Of particular importance, in cases applying the "substantial assistance" rubric of § 876, observed the Court, are five factors, set out in Comment d to § 876,[6] that the *Restatement* suggests should guide the inquiry as to whether the alleged aider and abettor has engaged in substantial assistance. These factors, first applied in Delaware in the seminal Court of Chancery case of *In re Dole Food Co., Inc. Stockholder Litigation,* 2015 Del. Ch. LEXIS 223, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015), were restated by the *Mindbody* Court as:

- The nature of the tortious act that the secondary actor participated in or encouraged, including its severity, the clarity of the violation, the extent of the consequences, and the secondary actor's knowledge of these aspects;
- The amount, kind, and duration of assistance given, including how directly involved the secondary actor was in the primary actor's conduct;
- The nature of the relationship between the secondary and primary actors; and
- The secondary actor's state of mind.

*Mindbody,* 332 A.3d at 395-96 (citing and paraphrasing *Dole*, 2015 WL 5052214, at *42, Del. Ch. LEXIS 223). For ease of reference, these four factors, articulated in *Mindbody*, and thereafter reiterated in *Columbia Pipeline,* are hereinafter referred to as the "*Restatement*/*Mindbody Factors.*"

---

[6] Comment d reads as follows;

> The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered.

*Id.* cmt. d.

These factors, held the *Mindbody* Court, "provide "a helpful analytical framework for assessing substantial assistance, knowledge, and participation." *Id.* at 396. The Court then proceeded to apply each of these factors to test whether Vista, the alleged aider and abettor in that case, had in fact engaged in substantial assistance, as the trial court had held. Carefully weighing each factor, the Supreme Court reversed the trial court, ruling that Vista had not "substantially participated" in the breaches of Mindbody's directors.

***Columbia Pipeline Further Elaborates the Restatement/Mindbody Factors.*** In *Columbia Pipeline,* decided only six months later, the Supreme Court expanded upon the *Restatement/Mindbody* framework for assessing whether an alleged aider and abettor had "substantially participated" in the underlying breaches of fiduciary duty, invoking the *Restatement (Third) of Torts'* analogous section devoted solely to aiding and abetting:

> **§ 28 Aiding and Abetting**
>
> A defendant is subject to liability for aiding and abetting a tort upon proof of the following elements:
>
> (a) a tort was committed against the plaintiff by another party;
>
> (b) the defendant knew that the other party's conduct was wrongful;
>
> (c) the defendant *knowingly and substantially assisted in the commission or concealment of the tort*; and
>
> (d) the plaintiff suffered economic loss as a result.

*Restatement (Third) of Torts, Miscellaneous Provisions,* § 28 (Am. L. Inst. 2020) (Oct. 2024 update), as quoted in *Columbia Pipeline,* 342 A.3d at 354-55 (emphasis added).[7]

[7] The *Miscellaneous Provisions* portion of the *Restatement (Third)*, including these provisions, received ALI's final approval in May 2025, shortly before *Columbia Pipeline* was issued. *See* https://www.ali.org/publications/restatement-law-third/torts-concluding-provisions (last accessed Aug. 13, 2026).

Of particular import to the *Columbia Pipeline* Court was comment c to this section of the *Restatement (Third)*:

> In *Mindbody*, however, . . ., we limited the aider and abettor's knowledge to "actual knowledge." The "actual knowledge" requirement is consistent with the comments to *§ 28 of the Restatement (Third) of Torts*. According to comment c of *§ 28*, it is not "enough to prove that the defendant should have known of the primary actor's wrongful conduct. The defendant's knowledge must be actual." This requirement stands to reason: For a defendant to have actual knowledge of the wrongful nature of its own conduct, the defendant must already have actual knowledge of the underlying tortious conduct. Actual knowledge is "clear and direct knowledge."

342 A.3d at 356 (quoting *Mindbody*, 332 A.3d at 356 (actual knowledge required); *Restatement (Third) of Torts, Miscellaneous Provisions,* § 28 cmt. c; and *Deutsche Bank Nat'l Tr. Co. v. Goldfeder*, 86 A.3d 1118, 2014 Del. LEXIS 24, at *6 (Del. 2014)).

***Framework for Analyzing Claims against Hoberman and her Firm.*** *Mindbody* and *Columbia Pipeline,* applying these *Restatement*-derived tort concepts, thus supply the analytical framework that the Court must apply in assessing the pure state law tort aiding and abetting claim asserted jointly against Hoberman and the Law Firm. Section II applies the heightened "actual knowledge" requirement to the Trustee's specific factual allegations, as outlined previously in the Statement of Relevant Facts. Sections III, IV, and V apply the *Mindbody/Restatement* factors to assess whether the Trustee has pled culpable, substantial assistance with respect to each of these specific acts. It is clear, when this analytical framework is applied to the facts actually alleged, that the Trustee falls short with respect to each of these essential elements.

## II. THE TRUSTEE FAILS TO PLEAD *ACTUAL* KNOWLEDGE, BY HOBERMAN, OF (A) THE UNDERLYING BREACHES OF FIDCUIARY DUTY ALLEGED, AND (B) THE IMPROPRIETY OF HER OWN CONDUCT.

An overarching inadequacy of the claims asserted against Hoberman and the Law Firm – applicable to each of the three specific acts alleged -- is the absence of particularized allegations that, if proved, would satisfy the dual scienter requirements of aiding and abetting under Delaware law. As reiterated most recently in *Columbia Pipeline,* two distinct forms of scienter must be established to support an aiding and abetting claim: (1) actual knowledge of the underlying breach of fiduciary duty; and (2) actual knowledge, on the part of the alleged aider and abettor, that her or his own conduct is improper. 342 A.3d at 356 (citing *Mindbody,* 332 A.3d at 390, 392).

Remarkably, although asserting serious, even sensational, tort claims against a leading lawyer who is not herself a fiduciary, the Trustee expends virtually no effort to advance particularized factual allegations to support *either* prong of this dual scienter requirement. Instead, the Trustee effectively glosses over this element, *assuming* for purposes of his pleading that Hoberman knew of the active breaches of fiduciary duty that founder-director Hunsicker has admitted, and *assuming* that she knew that other directors actively concealed Hunsicker's misconduct after it was brought, belatedly, to their attention.

*Actual* knowledge of the breaches is an essential element of the tort alleged; it cannot simply be assumed or inferred. Yet the Trustee offers nothing, in the way of particularized factual allegations, upon which this serious assumption is grounded.

At no point in the 360-paragraph Complaint, for instance, does the Trustee assert facts that would demonstrate that Hoberman did in fact obtain knowledge of Hunsicker's acknowledged misdeeds before they were disclosed to the Board and the public; at no point does the Trustee assert facts that would establish Hoberman as knowledgeable of, let alone a substantial participant in, Hunsicker's misdeeds; at no point does the Trustee assert that Hoberman was aware of, let alone participated in, the other directors' delay in disclosing Hunsicker's misdeeds upon becoming aware of them. Instead, the Trustee asks the Court simply to infer or assume that Hoberman must have been a knowledgeable, and culpably active, participant – an assumption that runs precisely counter to the Trustee's own allegations that Hoberman was intentionally kept in the dark.[8] That is, simply put, a failure to plead the essential elements of the tort under governing Delaware law. It is not a matter that can be ignored and relegated to discovery; it goes to the basic legal sufficiency of the Complaint itself to state a claim upon which relief may be granted, and the gatekeeper function of the Court, on a motion to dismiss, to ensure that it does.

Comparing the kinds of hypothetical evidence discussed in the preceding paragraph – the kinds of asserted evidence one would expect in a Complaint alleging that a nonfiduciary lawyer has knowingly, purposefully aided and abetted breaches of fiduciary

[8] Hunsicker's *specific* direction to keep Hoberman in the dark, Compl. ¶ 153, is discussed in greater detail in Section III, below.

duties – with what the Trustee actually asserts, as to actual knowledge, brings the difference into sharp relief. What the Trustee *actually* pleads is that Hoberman made a single statement (one that may well have been an innocent mistake on the facts actually pled) and reviewed two documents wearing her lawyer hat. That is it. And that, under *Mindbody* and *Columbia Pipeline,* is not nearly enough.

## III. THE TECH PIONEERS MISSTATEMENT CLAIM FAILS TO PLEAD SUBSTANTIAL ASSISTANCE; EVEN IF TRUE, THE SINGLE STATEMENT ALLEGED, WITHOUT MORE, CANNOT CONSTITUTE CULPABLE, SUBSTANTIAL PARTICPATION IN THE UNDERLYING BREACHES OF FIDCUIARY DUTY ASSERTED ON THE PART OF THE DIRECTORS.

The Trustee claims first that Hoberman made a statement, in 2021, to an investor, Tech Pioneers Fund, to the effect that CaaStle did not have audited financial statements. The Trustee asserts that Hoberman knew that this statement was untrue when made because she "knew that BDO was retained for the specific purpose of auditing CaaStle's financial statements" and, "i*n at least 2017 and 2018*, . . . [had] assisted CaaStle with collecting information necessary for BDO to complete audits for those fiscal years." Compl. ¶ 83 (emphasis added). The Trustee pleads no other factual detail; the form of the alleged statement, its recipient, and its timing (other than that it was in 2021) are entirely unaddressed. No specific reliance on the statement is pled; the Trustee alleges only that, at some undisclosed point after the alleged statement, Tech Pioneers purchased stock. *Id.* The Trustee does not assert causation flowing from the statement to the investment.

***Severity and Clarity of the Act, Consequences, and Alleged Aider and Abettor's Knowledge.*** What the Trustee pleads is simply an isolated statement, made by a non-fiduciary, to a party to which she owed no fiduciary duties, regarding a particular accounting practice of a privately-held company.[9] The Trustee insinuates that the statement must have been knowingly false when made because Hoberman, *three to four years earlier,* had had some vaguely-described involvement in collecting information for the accounting firm serving the company.[10] The Trustee fails, however, to connect the dots; he does not suggest that Hoberman was asked to make the alleged statement by fiduciaries who were breaching duties, nor does the Trustee even suggest that any fiduciary was aware of the alleged statement. By definition, if Hoberman was never asked to make the alleged statement – or the fiduciaries were unaware of it being made – Hoberman cannot have been providing "assistance" to fiduciaries clueless about her action.

The Trustee similarly fails to plead any facts suggesting that the recipient of the statement actually relied upon it in deciding to make an investment, or conversely that the

[9] The language of the Trustee's Complaint insinuates that audited financial statements were a given. Such a suggestion might be appropriate for a publicly-traded company, but CaaStle never got to the point of an initial public offering and as such was never subject to the financial reporting constraints incumbent upon a publicly-traded company. The form of financial reporting – including whether financial statements were merely compiled, or actually audited – was a decision for the Board, not an externally-imposed requirement. Whether statements for any given year were merely compiled, or actually audited, was a subject about which outside counsel, engaged only on an episodic basis, may well have had little firsthand knowledge, let alone certainty.

[10] What the Trustee appears to be referring to is Hoberman's receipt of a standard accountant's request for information during the earlier year(s). She was no longer receiving them by 2021.

recipient would not have invested if audited statements – to the extent that they existed in 2021 – had been presented.

***Amount, Kind, and Duration of Assistance Given, including Directness of Involvement***. As an initial matter, it is not clear– even if Hoberman made the alleged statement regarding audited financials – that the statement was made as a means of assisting some breach of fiduciary duty -- that it in fact assisted a breach committed or being committed – that it actually induced reliance – or that the recipient's decision would have been different if audited financial statements had been presented. The Complaint simply fails to plead these essential elements as to the Tech Pioneers Misstatement Claim. What the Complaint does offer is "assistance" – if it can be called that – that is minimal in its amount, kind, and duration, consisting of a single statement, made to a third party without any indication of concert with or knowledge of fiduciaries, untethered to any pleaded reliance or damages.

Moreover, the Complaint, far from suggesting that Hunsicker *sought* Hoberman's assistance, *affirmatively* pleads that Hunsicker actively kept information *away* from Hoberman. By way of example, when the Head of Finance asked whether Hoberman should be advised regarding the details of the BDO termination, Hunsicker responded: "*Not Lori. Then it will need to be disclosed in funding docs*." Compl. ¶ 153 (emphasis added). These are *not* the words of a fiduciary seeking and receiving substantial, culpable assistance. The internal inconsistency of the Trustee's claims is palpable; it is axiomatic that a party kept in the dark about breaches of fiduciary duty cannot form the intent to assist that which she does not know.

***Nature of Relationship between Alleged Aider and Abettor and Primary Actors.*** Hoberman was outside counsel providing episodic services with respect to discrete requests; the debtor had in-house general counsel. Hoberman was not an insider in any sense of the term. As to the alleged Tech Pioneers Misstatement in particular, the Trustee does not allege that Hoberman had *any* relationship with the directors and officers or their actions with respect to financial reporting as it stood in 2021 (and in fact, she did not); the Complaint simply offers nothing to the contrary in this regard. In the absence of any well-pleaded allegations to the contrary, the Tech Pioneers Misstatement are equally consistent with Hoberman having been misled by Hunsicker and purposefully left in the dark – or even with having made a simple mistake, or having an imperfect memory of events then three to four years distant. There simply is no particularized allegation that would support the essential element of having *knowingly* provided substantial, *culpable* assistance to the commission of *known* breaches of fiduciary duty.

***Alleged Aider and Abettor's State of Mind.*** As alluded to earlier in this section, the Trustee pleads no facts that would support the allegation that Hoberman, in making the asserted Tech Pioneers "misstatement," intended to assist directors who were breaching fiduciary duties. Nor is there any allegation that those directors were even aware of her asserted "misstatement." Indeed, the one thing about Hoberman's contemporaneous state of mind that the Trustee does plead is that the principal errant fiduciary – Hunsicker – knew perfectly well that Hoberman would require "disclosure" of information of deception provided to her, Compl. ¶ 153, and Hunsicker actively kept such information from Hoberman for that reason.

***Summary: Application of the Restatement/Mindbody Factors to the Tech Pioneers Misstatement Claim.*** As discussed in this section, not a single one of the four *Restatement/Mindbody Factors* augurs toward finding that Hoberman possessed actual knowledge of the breaches of fiduciary duty assertedly being undertaken, or engaged in culpable, substantial participation in those asserted breaches.

## IV. THE SETTLEMENT MARKUP CLAIM FAILS TO PLEAD SUBSTANTIAL ASSISTANCE; REVIEWING SOME OTHER LAWYER'S DRAFT SETTLEMENT AGREEMENT RESOLVING A REDEMPTION DISPUTE CANNOT, WITHOUT MORE, CONSTITUTE CULPABLE, SUBSTANTIAL PARTICIPATION IN THE UNDERLYING BREACHES OF FIDCUIARY DUTY ALLEGED ON THE PART OF THE DIRECTORS.

The Trustee next pleads that Hoberman reviewed a draft settlement agreement, prepared by *unrelated* counsel representing CaaStle with respect to an investor's ("Investor A") effort to secure a capital redemption (a matter with respect to which Hoberman clearly was *not* representing CaaStle, *see* Compl. ¶¶ 167-68 (Hoberman introduced independent counsel to company to represent the company in this matter)), and made unidentified revisions to unidentified provisions. *Id.* ¶ 168 ("Hoberman made several revisions to the draft settlement and release agreement"). The Trustee raises questions whether the Board approved the settlement; importantly, the Trustee does not allege that Hoberman had any interactions with the Board or provided any advice to it, which is consistent with the fact – pled by the Trustee – that Hoberman was *not* representing the company with respect to the settlement discussions with the investor.

***Severity and Clarity of the Act, Consequences, and Alleged Aider and Abettor's Knowledge.*** The Trustee pleads only that Hoberman reviewed a legal agreement she had not drafted and suggested "several revisions," otherwise unspecified. The Trustee does not even allege that the proposed revisions had anything to do with any asserted breach by fiduciaries, or substantially assisted in carrying such breaches forward; the Complaint is simply silent on these critical points.

***Amount, Kind, and Duration of Assistance Given, including Directness of Involvement***. The Settlement Markup Claim asserts that Hoberman performed an isolated review of an agreement, prepared by unrelated counsel representing CaaStle *vis-à-vis* Investor A, and suggested some revisions. The "assistance," if it can be called that, was in the form of routine legal services relating to a matter in which Hoberman was not even engaged as principal counsel. The assistance is, by its nature, limited in scope, limited in duration, and in the nature of routine professional services.

***Nature of Relationship between Alleged Aider and Abettor and Primary Actors.*** The Trustee pleads nothing to suggest that Hoberman's relationship to the primary actors – the directors and officers who are the fiduciaries – with respect to the Settlement Markup was anything other than indirect and remote. Her involvement was purely as an attorney, providing input to another attorney, who was in fact representing the Company with respect to Investor A's demands. The Complaint pleads nothing to suggest that Hoberman had any involvement other than providing some written comments regarding another's lawyer's work product.

***Alleged Aider and Abettor's State of Mind.*** The Complaint similarly asserts no particularized facts that, if proven, would tend to support the necessary element that Hoberman engaged in *culpable* participation – participation informed by knowledge both of the breaches alleged and that her own, exceedingly limited, role in the Settlement Markup Claim was improper. Indeed, as discussed in foregoing sections, the Trustee himself pleads, to the contrary, that Hunsicker directed that detailed information be kept from Hoberman – *precisely* because she inevitably would require that adverse information be "reported" as part of the ongoing funding efforts.

***Summary: Application of the Restatement/Mindbody Factors to the Settlement Markup Claim.*** As the preceding discussion of the *Restatement/Mindbody* factors makes clear, the Settlement Markup Claim asserts nothing more than an isolated instance of routine legal work, reviewing a proposed settlement with an investor prepared by unrelated counsel who was actually representing the Company with respect to that claim. On the facts alleged, Hoberman's involvement was both indirect and minimal; no contact with the fiduciaries placed at issue in this action is asserted, let alone any meaningful assistance --other than briefly turning an experienced eye to a draft document and providing comments *to another lawyer*. The Trustee's own pleading raises substantial doubts that Hoberman's state of mind could have encompassed culpable participation, inasmuch as the Trustee himself pleads that fiduciary Hunsicker directed that adverse information be kept away from Hoberman because she would require disclosure of it.

## V. THE REDEMPTION REVIEW CLAIM FAILS TO PLEAD SUBSTANTIAL ASSISTANCE; REVIEWING A PROPOSED STOCKHOLDER REDEMPTION CANNOT, WITHOUT MORE, CONSTITUTE CULPABLE, SUBSTANTIAL PARTICPATION IN THE UNDERLYING BREACHES OF FIDCUIARY DUTY ALLEGED.

Third and finally, the Trustee pleads that Hoberman "reviewed and/or approved" documents relating to "a questionable stock redemption in relation to shares allotted to management personnel in 2011 or 2012." Compl. ¶ 222.

This is the thinnest of all of the Trustee's three claims against Hoberman. The Trustee tells the Court and these Defendants essentially nothing regarding what redemption was proposed, what document was reviewed, or anything else about Hoberman's knowledge of and role (if any) in the contemplated transaction. One is left with far more questions than answers. When the *Restatement/Mindbody Factors* are applied to this poorly-delineated claim, it is clear that the Trustee is a long, long way from pleading either actual knowledge *or* culpable, substantial participation.

***Severity and Clarity of the Act, Consequences, and Alleged Aider and Abettor's Knowledge.*** The Trustee simply does not provide enough detail, in his factual allegations underpinning the Redemption Review Claim, for the Court to conclude what the act complained of was – let alone determine its severity or clarity. Hoberman's role – an isolated legal "review" of *something* (perhaps, but not clearly, a redemption agreement) – cannot be described as a significant, let alone severe, form of assistance to breaches of

fiduciary duty by one or more directors. Nor does the Trustee's Complaint assert any basis upon which to believe that Hoberman knew the true financial condition of the Company.[11]

***Amount, Kind, and Duration of Assistance Given, including Directness of Involvement***. What the Trustee does *not* say, with respect to the Redemption Review Claim, is more telling than what *is* said. The Trustee alleges essentially nothing that would permit the Court to assess the amount, kind, and duration of assistance alleged to have been given. What is alleged suggests that the "assistance" – if it can be called that – consisted of a one-off review of a proposed redemption, or perhaps redemption agreement, by a well-regarded transactional lawyer who assisted the company from time to time but was not its general counsel. The facts alleged suggest that the assistance was indeed simply a routine legal review, singular, sharply limited in time. No direct involvement in the transaction – for instance, as a planner, negotiator, or even scrivener – is alleged.

***Nature of Relationship between Alleged Aider and Abettor and Primary Actors.*** The Trustee's threadbare pleading fails even to *identify* the actors relevant to the Redemption Review Claim, let alone to plead anything regarding Hoberman's relationship, *if any,* to the unnamed actors.

***Alleged Aider and Abettor's State of Mind.*** As with the rest of the Redemption Review Claim, the Trustee's pleading pleads absolutely nothing regarding Hoberman's

[11] Such knowledge is essential to the Trustee's assertion, in challenging the Redemption Agreement Review, that Hoberman aided and abetted breaches of fiduciary duty with respect to a redemption. Without *actual* knowledge that the redemption under discussion was improper because the Company's capital was impaired or it was insolvent, as alleged in Count V (¶¶ 333-60), Hoberman cannot possibly have possessed "*actual* knowledge" of the breaches at issue, let alone that her own review of a document was "improper."

state of mind – or for that matter state of knowledge – at the time of performing the isolated legal review that is (thinly) pled.

***Summary: Application of the Restatement/Mindbody Factors to the Redemption Review Claim.*** Not a single one of the *Restatement/Mindbody Factors* can be said to point toward adequate pleading of actual knowledge or substantial participation, let alone both of these essential elements of the tort. Each of the *Restatement/Mindbody Factors* suggests precisely the opposite.

## *Conclusion*

In seeking to bring Hoberman, an only episodically-engaged outside counsel, into the heart of his claims of insider -- director and officer -- misfeasance, the Trustee grasps for a bridge too far. Only three instances of conduct are alleged against Hoberman, and as demonstrated above, none of them – even when the facts are taken as true for purposes of this motion – meets the high bars of actual knowledge and culpable, substantial assistance that Delaware law requires. One consists of a single, isolated statement, one of at best limited importance that, as pled, cannot be ruled out as nothing more than an uninformed mistake; the other two are routine and narrowly limited legal reviews, accomplished by a transactional lawyer for a paying client, at that client's specific, limited, request and direction.

Aiding and abetting has never been applied in Delaware in such an overreaching manner. Under the Trustee's reasoning, any lawyer who reviews a document for a client, led by directors or officers who may have breached duties without the lawyer's actual knowledge (let alone the lawyer's culpable, substantial involvement), is placed at risk as a

defendant in an aggressive aiding and abetting claim. Far from being a notoriously difficult claim to prove, asserting a viable aiding and abetting claim would become a legal cakewalk.

The Court can, and should, stop this overreach at the motion to dismiss stage. The Trustee appears successfully to be pursuing his claims, sounding in directorial loyalty and oversight, against those in the boardroom, in this action. Leaping from the boardroom to an outside law office, however, is a leap that Delaware law does not permit on the thin facts alleged. The motion to dismiss should be granted.

Respectfully submitted,

**O'HAGAN MEYER PLLC**

By: *[/s/ Alan D. Albert]*
Alan D. Albert (DE 6258)
2751 Centerville Road, Suite 100
Wilmington, DE 19808
P: (302) 492-2151
F: (804) 237-0250
E: *aalbert@ohaganmeyer.com*

Dated: August 14, 2026

# CERTIFICATE OF SERVICE

I certify pursuant to Fed. R. Bankr. P. 7005 and Fed. R. Civ. P. 5 that, on the 14th day of August, 2026, the foregoing Opening Brief in Support of Motion to Dismiss was filed by means of the CM/ECF electronic filing system, which will cause a Notice of Electronic Filing (NEF) to be served on counsel of record, as follows:

Peter C. Hughes, Esquire
Dilworth Paxson LLP
800 N. King Street, Suite 202
Wilmington, DE 19801

Lawrence G. McMichael, Esquire
Ira N. Richards, Esquire
David Rodkey, Esquire
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103

*Counsel for Plaintiff George L. Miller, Chapter 7 Trustee*

Erin R. Fay, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

Caz Hashemi, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304

*Counsel for Defendant John Hennessy*

Thomas E. Butler, Esquire
White and Williams LLP
810 Seventh Avenue, Suite 500
New York, NY 10019

Michael Ingrassia, Esquire
White and Williams LLP
600 N. King Street, Suite 800
Wilmington, DE 19899-1347

Stuart J. Wells, Esquire
White and Williams LLP
810 Seventh Avenue, Suite 500
New York, NY 10019

*Counsel for Defendant Dayna Corlito*

*/s/ Alan D. Albert*
Alan D. Albert (DE 6258)
O'Hagan Meyer PLLC
2751 Centerville Road, Suite 100
Wilmington, DE 19808
T: (302) 492-2151
*aalbert@ohaganmeyer.com*