# Exhibit A

**(Agreement)**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement"), dated as of August 31, 2026, is entered into by and between (i) George L. Miller, solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of CaaStle, Inc. (the "Trustee"); and (ii) John Hennessy, Georgiy Goldenberg, Jaswinder Pal Singh, Scott Callon, and Dayna Corlito (collectively, the "Management Defendants"). The Trustee and the Management Defendants are collectively referred to as the "Parties," or any one of them separately as a "Party."

WHEREAS:

A. The Management Defendants are former officers and/or directors of CaaStle, Inc. (the "Debtor").

B. On June 20, 2025, the Debtor filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the District of Delaware (the "Court"), initiating Case No. 25-11187-BLS. The Trustee was subsequently appointed as the Chapter 7 Trustee for the Debtor's bankruptcy estate (the "Estate").

C. On March 27, 2026, the Trustee filed an adversary complaint in the Court, captioned *Miller v. Hunsicker et al.*, Adversary Case No. 26-50225 (BLS) (the "Management Action"), asserting claims against the Management Defendants, as well as against Christine Hunsicker, Chirag Jain, Lori Hoberman and Hoberman Law Group PLLC (the "Complaint").

D. On July 31, 2026, the Management Defendants, though counsel for certain Management Defendants at Wilson Elser Moskowitz Edelman & Dicker LLP, accepted the settlement offer set forth in a letter from counsel to the Trustee dated May 14, 2026.

E. The Trustee has commenced adversary proceedings against (1) Jaswinder Pal Singh, individually and in his capacity as Trustee of the Singh Revocable Trust, and John Does 1-10 which is pending in the Court as Adv. No. 26-50216 (BLS) (the "Singh Redemption Action"); (2) Georgiy Goldenberg a/k/a George Goldenberg, individually and in his capacity as Trustee of the Goldenberg Trust Established September, 2017, Svetlana K. Goldenberg, in her capacity as trustee of the Goldenberg Trust Established September, 2017, and John Does 1-10 which is pending in the Court as Adv. No. 26-50215 (the "Goldenberg Redemption Action"); (3) Michael Delgass, in

Formatted: Font: Time New Roman, 8 pt

Formatted: Left

#12580276v1

8/31/21

8/31/2026
12:51PM

his capacity as Trustee of the Ercolani 2012 Gift Trust and John Does 1-10, which is pending in the Court as Adv. No. 26-50242 (the "Ercolani Trust Redemption Action"); and (4) Christine Hunsicker and John Does 1-10, which is pending in the Court as Adv. No. 26-50635 (BLS) (the "Hunsicker Redemption Action") (together, the Singh Redemption Action, the Goldenberg Redemption Action, the Ercolani Redemption Action, and the Hunsicker Redemption Action are referred to as the "Redemption Actions").

F. Count V of the Complaint asserts a claim for director liability for unlawful redemptions pursuant to 8 *Del. C.* §§ 160 and 174 against Hennessy, Callon, Hunsicker, and Singh. As set forth in paragraph 335 of the Complaint, in the Management Action the Trustee asserts claims only with respect to stock redemptions in favor of third parties; the Complaint does not assert any claim against Hunsicker for redemption of stock by Hunsicker, or any claim against Singh for redemption of stock by Singh. Such claims have instead been asserted in the Hunsicker Redemption Action and the Singh Redemption Action. None of the Redemption Actions are settled by the settlement of the Management Action.

NOW, THEREFORE, in exchange for good and valuable consideration, the Parties agree as follows, subject to the approval of the Court:

1. Effectiveness.

(a) The "Effective Date" shall be the first date on which each of the following has occurred: (i) the Parties have delivered an executed copy of this Agreement to one another; (ii) the Court has entered an order approving this Agreement, and ordering the Trustee to perform under this Agreement, in a form reasonably acceptable to the Parties (the "9019 Order"); (iii) the 9019 Order has become a Final Order (defined below), and (iv) the Trustee receives payment of $3.5 million in good funds, *provided, however*, that the condition at subsection (iii) may be waived upon agreement of all Parties in writing, each in their sole discretion.

(b) "Final Order" means the later of: (i) the entry of the 9019 Order and the expiration of any time for appeal, reconsideration, reargument, rehearing, or other review of that order; or (ii) if any appeal or application for reconsideration, reargument, rehearing, or other review is filed and not dismissed or withdrawn, issuance of a decision upholding the 9019 Order in all material respects, which is no longer subject to appeal, reconsideration, reargument, rehearing, or other review, by certiorari or otherwise, and the expiration of all times for the filing of any petition for

Formatted: Font: Time New Roman, 8 pt

Formatted: Left

8/31/26



#125802476v1

8/31/2026 12:51pm

reconsideration, reargument, rehearing, appeal, or review of the order or any order affirming the order.

(c) If the 9019 Order has not become a Final Order for any reason within 60 days after this Agreement has been executed by all parties, then absent a further agreement in writing by all of the Parties, this Agreement shall be canceled and void *ab initio*.

2. Settlement Payment.

(a) The Management Defendants shall cause the sum of $3,500,000.00 (US Dollars) to be paid to the Trustee to the account identified in writing by the Trustee (the "Settlement Payment"). The Settlement Payment shall be issued by check(s) and mailed by 1-2 day delivery within 45 days after entry of the 9019 Order. Upon entry of the 9019 Order, the Management Defendants shall provide notice to any insurer of entry of the 9019 Order within 24 hours of its entry.

(b) The Trustee agrees to provide any information reasonably requested by the Management Defendants to effectuate the Settlement Payment.

(c) Continental Casualty Company ("Continental") has offered to contribute to the Settlement Payment the remainder of its policy limits under the Debtor's applicable D&O policy number 6052060736, effective 12/18/2024 to 12/18/2025 (the "CNA Policy"). Continental's offer is subject to several conditions, including the receipt of an Order from the Bankruptcy Court approving this Agreement and permitting Continental to pay the remainder of its Policy limits towards the Settlement Payment. Under no circumstances is Continental responsible for paying more than the remainder of the CNA Policy limits. Nothing in this paragraph shall be construed as any insurance policy limits reducing, limiting, or changing the total $3.5 million Settlement Payment due to the Trustee under this Agreement.

(d) The Settlement Payment shall be the full and sole monetary contribution made by or on behalf of the Management Defendants in connection with the Settlement. The Management Defendants shall have no responsibility for payment of the Trustee's attorneys' fees and expenses or any other amounts in connection with the Management Action or the Settlement.

3. Court Approval. As soon as practicable after the Parties have executed this Agreement, the Trustee shall file a motion in the Court

Formatted: Font: Time New Roman, 8 pt

Formatted: Left

8/31/26

8/31/2026
12:51pm

seeking entry of the 9019 Order. The Trustee will give the Management Defendants a reasonable opportunity to review and comment on such draft motion before filing it with the Court. The Parties and their attorneys agree to use their individual and collective best efforts to obtain Court entry of the 9019 Order. Pending the occurrence of the Effective Date, the Parties will cooperate to obtain a stay of all proceedings and deadlines in the Management Action as to the Trustee's claims in the Management Action against the Management Defendants, Hunsicker, and Jain only.

4. Dismissal of the Management Action. Within 14 days after the Effective Date, the Trustee shall file a notice of dismissal with prejudice as to claims asserted in the Management Action against the Management Defendants, Christine Hunsicker, and Chirag Jain only.

5. Mutual Releases.

(a) The term "Released Claims" shall mean any and all claims (including without limitation, any and all claims or causes of action for contribution, indemnity, debts, obligations, attorney's fees, defamation, slander, libel, intentional and/or negligent interference, emotional distress, demands, liabilities, suits, judgments, damages, rights, remedies and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, accrued or unaccrued, whether asserted directly, derivatively, or on a representative basis, whenever arising, in law, equity or otherwise), from the beginning of the world through the date of the full execution of this Settlement Agreement, including, without limitation, any and all claims that directly or indirectly concern, involve, arise from, relate to or are based upon: (i) any claims or defenses that were, or could have been, asserted in the Management Action or the Complaint; or (ii) the subject matter of the Complaint (the "Subject Matter").

(b) Notwithstanding anything in this Agreement to the contrary, Released Claims do not include: (i) any claim to enforce a Party's rights or obligations under this Agreement; (ii) any claim by a Management Defendant related to advancement, indemnification or insurance for any proceeding other than the Management Action; (iii) any claims asserted in any of the Redemption Actions against Christine Hunsicker, Jaswinder Pal Singh, or Georgiy Goldenberg, regardless of whether Christine Hunsicker, Jaswinder Pal Singh or Georgiy Goldenberg is expressly named therein as a defendant or has liability in such actions as a John Doe Defendant; (iv) any counterclaims which were asserted in the Singh Redemption Action or the Goldenberg

Formatted: Font: Time New Roman, 8 pt

Formatted: Left



#12302476v1

8/3/21

12/31/2026. 1:51 pm

Redemption Action before August 1, 2026; or (v)any claim by the Trustee based on a breach of the representation and warranty set forth in Section 6(b) of this Agreement. Nothing in this Agreement shall prevent the Trustee from objecting to or defending against a claim (whether asserted or unasserted, scheduled or unscheduled) of any Management Defendant, Christine Hunsicker, or Chirag Jain, operate as a release of any such objection, or alter or impair the Trustee's rights to file or prosecute such an objection or to defend against any claim.

(c) Effective as of the Effective Date, the Trustee, on behalf of himself, the Company, and the Estate, releases each of the Management Defendants and Hunsicker and Jain from any and all Released Claims by or on behalf of the Trustee, the Company, or the Estate.

(d) Effective as of the Effective Date, the Management Defendants each release and forever discharge the Trustee, the Company, and the Estate from any and all Released Claims. For avoidance of doubt, the releases given under this subsection are not intended to ~~affect or~~ impair any defense or argument in response to a cause of action brought against any Management Defendant by a non-Party.

(e) With respect to any matters released by this Agreement, the Parties waive and relinquish any rights, defenses, or benefits they may have under Section 1542 of the California Civil Code or any analogous provision, which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

(f) The Parties acknowledge that they may hereafter discover facts in addition to, or different from, those which they now know or believe to be true with respect to the Complaint, the Management Action, or the Subject Matter. The Parties agree that the releases under this Agreement, which are an integral part of the consideration provided under it, shall be, and will remain, effective in all respects notwithstanding the discovery of such different or additional facts.

(g) Effective as of the Effective Date, each Party agrees that such Party shall not (i) assert, or threaten to assert, a claim against another Party; (ii) seek any discovery from another Party in the Management

Formatted: Font: Time New Roman, 8 pt

Formatted: Left



#125802476v1

8/31/26

8/31/2026 12:51 pm 12:51

Action or any other matter, arising from or related to the Subject Matter, except as is reasonably necessary for the Party seeking the discovery to defend itself against any claims asserted in any other matter, or (iii) assist or encourage another person to do any of the foregoing. Notwithstanding the foregoing, nothing in this subsection shall be construed as (x) preventing the Trustee from seeking reasonable discovery from the Management Defendants in connection with claims asserted in the Management Action against any party to the Management Action which is not a Party to this Agreement, or (y) preventing the Trustee or the defendants in the Redemption Actions from prosecuting the Claims or Counterclaims therein or from seeking discovery from any Party to the Management Action in connection therewith.

6. Additional Provisions.

(a) No Admissions. The Parties settled to resolve disputed claims. The execution or existence of the Settlement and this Agreement shall not be construed as an admission on the part of any of Party of liability, or as to the merit of any claim or defense.

(b) Representation as to Insurance. The Management Defendants represent and warrant that after reasonable investigation they are not aware of any insurance policy that provides or may provide coverage for them for the claims asserted in the Management Action by the Trustee other than two policies issued by CNA and Zurich Insurance Group to the Debtor having an aggregate limit of $5,000,000 in coverage. The Management Defendants further acknowledge that this representation is material to the Trustee in entering into this Settlement Agreement.

(c) Integration; Complete Agreement; Reliance. This Agreement constitutes the final and complete agreement of the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, covenants, agreements or representations concerning any matters directly, indirectly or collaterally related to the subject matter of this Agreement. This Agreement fully sets forth the rights and obligations of the Parties. Each Party represents that, when deciding to execute this Agreement, that Party has not relied on any representation made by any other Party, nor on the absence of any representation by any other Party, except as stated in this Agreement.

(d) Amendment. This Agreement cannot be amended, waived or modified except by a writing executed by each of the Parties which expresses an intention to modify this Agreement.

Formatted: Font: Time New Roman, 8 pt

Formatted: Left

8/31/21

8/31/2026 12:51pm

#125802476v1

(e) Construction. This Agreement shall be construed in accordance with the laws of the State of Delaware. The language of the Agreement shall not be construed for or against any Party by reason of that Party's participation or lack of participation in drafting any provision of the Agreement. The headings used herein are for reference only and shall not affect the construction of this Agreement.

(f) Venue. Any disputes between or among any of the Parties arising out of, or related to, this Agreement, or its performance, shall be resolved exclusively in (i) the Court, in the first instance; or (ii) if the Court cannot, or declines to, exercise jurisdiction over the dispute, a federal or state court of competent jurisdiction sitting in Wilmington, Delaware. The Parties irrevocably waive any right to trial by jury in any action arising out of or related to this Agreement.

(g) Authority. The Parties each represent that they: (i) have the sole right and exclusive authority to grant the releases, covenants, and other promises set forth herein; (ii) are the sole owners of the Released Claims herein and have not previously assigned or transferred, or purported to assign or transfer, any interest in any such claim; and (iii) have taken all actions and obtained all authorizations, consents and approvals as are conditions precedent to their authority to execute this Agreement.

(h) Understanding. The Parties each represent that they: (i) have had the opportunity to receive the advice of independent counsel with respect to all matters concerning the Settlement and this Agreement; (ii) read and understand the terms of this Agreement; and (iii) voluntarily accept this Agreement.

(i) Counterparts. This Agreement may be signed in counterparts, which will be binding upon the Parties as if all Parties executed the original hereof.

(j) Signatures. This Agreement may be executed by facsimile or electronic signatures. Facsimile or electronic signatures shall have the same force and effect as if the Agreement bore an inked original signature or signatures.

(k) Successors and Assigns. This Agreement shall bind, and inure to the benefit of, the respective successors and assigns of each of the Parties.

8/31/26

8/31/2026
12:51

Formatted: Font: Time New Roman, 8 pt

Formatted: Left

#125802476v1

(l) Severance. In the event that any term of this Agreement shall be declared invalid, void, or unenforceable by a final judicial determination, such portion shall be deemed severed from this Agreement and the remaining parts shall remain in full force and effect, so long as the economic and legal substance of the transaction contemplated by this Agreement is not affected in any manner materially adverse to any Party.

*Signature page follows.*

8/31/202
12:51

8/31/26

Formatted: Font: Time New Roman, 8 pt

Formatted: Left

**SIGNATURE PAGE**
**TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

AGREED AND ACCEPTED as of the date of this Agreement written above:

George L. Miller, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.

8/26/2026 12:57 PM

John Hennessy

Georgiy Goldenberg

Jaswinder Pal Singh

Scott Callon 8/31/26

Dayna Corlito

Formatted: Font: Time New Roman, 8 pt

Formatted: Left

**SIGNATURE PAGE**
**TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

AGREED AND ACCEPTED as of the date of this Agreement written above:

George L. Miller, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.

______________________________

John Hennessy

______________________________

Georgiy Goldenberg

______________________________

Jaswinder Pal Singh

______________________________

Scott Callon

______________________________

Dayna Corlito

Dayna Corlito
______________________________

**SIGNATURE PAGE**
**TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

AGREED AND ACCEPTED as of the date of this Agreement written above:

George L. Miller, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.

George L. Miller 8/26/2026 12:57 pm

John Hennessy

DocuSigned by:
John Hennessy
347DBB4743E04D8...

Georgiy Goldenberg

Jaswinder Pal Singh

Scott Callon

Dayna Corlito

Formatted: Font: Time New Roman, 8 pt
Formatted: Left

**SIGNATURE PAGE**
**TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

AGREED AND ACCEPTED as of the date of this Agreement written above:

George L. Miller, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.

8/26/2026 12:57 PM

John Hennessy

Georgiy Goldenberg

Jaswinder Pal Singh

Scott Callon

Dayna Corlito

Formatted: Font: Time New Roman, 8 pt
Formatted: Left

**SIGNATURE PAGE**
**TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

AGREED AND ACCEPTED as of the date of this Agreement written above:

George L. Miller, solely in his capacity as chapter 7 trustee for the bankruptcy estate of CaaStle, Inc.

8/26/2026 12:57 pm

John Hennessy

Georgiy Goldenberg

08/26/2026 1:28pm PT

Jaswinder Pal Singh

Scott Callon

Dayna Corlito

Formatted: Font: Time New Roman, 8 pt

Formatted: Left